Lahey v. Brady.

## HUGH LAHEY v. WILLIAM S. BRADY, impleaded with JOHN RIGNEY.

The cause of action in a replevin suit survives the death of the plaintiff, though not of the defendant, and the action may be continued in the name of the decedent's representatives; in which case the sureties of the decedent on the replevin bond continue liable.

The plaintiff in a replevin suit died pending the action, and the defendant procured an order against his administratrix that she continue the action, and obtained a judgment in the action against her by default;—*Held*, that the action was properly continued, and that the sureties of the plaintiff were liable upon their bond for the defendant's damages in the revived suit.

APPEAL from a judgment of Special Term overruling a demurrer.

The action was founded upon an undertaking in replevin, given by the defendants as sureties of one Thomas P. Sherlock. Sherlock brought suit against Hugh Lahey to recover possession of a horse, and on taking the horse, gave, with the defendants to this action, the usual undertaking. Before the trial of that action, Sherlock died, and his widow was appointed his administratrix. Lahey thereupon moved that the action be continued in the name of the administratrix, and upon her default, obtained an order to that effect. The administratrix not appearing, Lahey obtained judgment against her, and on a writ of inquiry, his damages were assessed at two hundred and eighty-one dollars and eight cents. Lahey then commenced this action upon the original undertaking against the defendants Rigney and Brady. Rigney put in an answer, and the defendant Brady demurred to the complaint, as " not stating facts sufficient to constitute a cause of action." The demurrer was overruled at the Special Term, and judgment entered on the demurrer for the plaintiff, from which judgment the. defendant Brady appealed.

*C. A. Nichols*, for the appellant.

*Capron & Lake*, for the respondent.

Lahey v. Brady.

BY THE COURT.—DALY, F. J.—This was an action against sureties upon an undertaking in replevin. While the action of replevin was pending, the plaintiff died, and the defendant, upon motion, obtained an order from the Court, that the administratrix of the plaintiff should continue the action, which she failed to do, and the defendant obtained judgment. The judgment was not paid, and the action being brought upon the undertaking, the defendants demurred upon the ground that the action of replevin abated by the death of the plaintiff.

It was insisted that replevin was not one of the class of actions which could be continued by order of the Court, in the name of the personal representatives of the deceased party, for the reason that the cause of action did not survive, and that therefore all the proceedings had, by the order of the Court, after the death of the plaintiff in the replevin, were without authority and void.

At the common law all actions abated by the death of either party for the want of litigants, and if the cause of action survived, the personal representatives of the deceased party had to bring another action. In replevin, if the plaintiff died, the cause of action survived, but if the defendant died, the right of action against him died with him, so that although the personal representatives of a party from whom goods or chattels had been tortiously taken in his life-time, might maintain replevin, no such action could be maintained against the personal representatives of one who in his life-time had tortiously possessed himself of goods, unless the property came into the possession of the personal representatives, and they refused to restore it. In the much debated case of *Mason* v. *Dixon*, (Sir Wm. Jones' Rep., 173), the common law was declared by the Court to be as follows: If the goods of J. S. were taken tortiously, and he died, his executor could not have trespass at the common law, even though the goods were destroyed, but he could have replevin by a writ in detinue for the recovery of the thing itself, and if J. S. took goods tortiously, and died, trespass would not lie against J. S.'s executor, even though the goods were destroyed; but if the executor have the goods in his possession, then detinue would lie against him upon his own possession.

The rule of the common law was enlarged by the statute 4, of Ed. III., ch. 7, which gave a remedy in damages to the

cutor for a tortious carrying away of the goods of the testator in his lifetime, and this statute being always equitably construed, the executor might, according to the exigencies of his case, bring replevin, detinue, trover, trespass, or an action for money had and received. It was the design of the statute, said the Court in the *Bishop of Coventry and Litchfield's Case* (1 Anderson R., 241), where the testator had been tortiously deprived of his chattels, that the executor should have such action as the testator could have had; and see to the same effect, *Countess of Rutland's Case*, 1 Cro. Eliz., 378; *Berwick* v. *Andrews*, 2 Ld. Ray., 973 & 4; *Chamberlain* v. *Williamson*, 2 M. &S., 408.

But neither this statute nor the common law gave any right of action against the executor or administrator of a person who had tortiously taken goods in his lifetime (*Carter* v. *Fossett*, Palmers' R., 329; *Hambly* v. *Trott*, Cowp., 371).

Thus it was held in *Mellen* v. *Baldwin* (4 Mass. R., 480), that though the action of replevin survives the death of the plaintiff, it does not survive the death of the defendant. "In replevin," said Chief Justice PARSONS, in delivering the opinion of the Court, "the ground of action for the plaintiff, is his property, either general or special, and a tortious violation of his right of property by the defendant. The defendant is therefore charged with a tort which cannot survive against his executor or administrator. * * * * But the executor or administrator of a plaintiff in replevin may come in and prosecute, because the chattels of the deceased being vested in him by the law, he might sue a replevin against the defendant, who had unlawfully taken, and still held them, and this within the equity of the statute of 4 Edw., III."

The present is the case of the death of a plaintiff in replevin where, as has been shown by these authorities, the cause of action survives; and the Code declares, that where the cause of action survives, the action shall not abate, and that the Court may order it to be continued by the representatives or successor, in interest of the party deceased.

The two cases in this State relied on by the defendants upon the argument, are not in conflict with the view of the law as above stated. *Wicker's Executors* v. *Underhill*, 19 Wend., 447, was a case of the death of a defendant in replevin, and the

Dayton v. Rowland.

fair days, including the day of sale, to unload the vessel.   The
sale was made on the 14th of May, 1862, and the two following
days were fair.   On the day of the sale, the defendants sent
their sampler, who examined the grain, and reported it equal to
the sample.   On the same day, Gordon's clerk was referred by one
of the defendants to the sampler, a Mr. Grout, for directions as
to the disposal of the grain.   The clerk went several times to
Grout for directions, and finally was directed by him to have the
grain alongside of the ship Bavaria.   The clerk, thereupon, in
the afternoon of 15th, filled up an order to that effect, and gave
it to Grout.   This order was delivered on the boat on the morn-
ing of the 16th, between nine and ten o'clock, and the boat im-
mediately proceeded to the ship Bavaria.   Mr. Dane, the agent,
and part owner of the boat, learned from Mr. Grout that the
ship was not ready to receive cargo, but probably would be ready
by noon of the next day.   Mr. Dane, thereupon, gave notice to
the plaintiffs' agents, that the boat must be unloaded that day,
or that he would put the wheat in store; and, not hearing fur-
ther from them, at about three p. m. ordered the boat to leave
the Bavaria, and placed the wheat in store, in his own name,
subject to his order, paying the charges.   The next day, the
17th, he gave plaintiffs' agent notice that they could have the
wheat on paying these charges, which they did.

The defendants, having demanded the grain, it was afterwards
delivered to them, upon an understanding that they would pay
the amount paid by the plaintiffs' agents for lighterage and stor-
age, if bound in law to do so.

The defendants' evidence contradicted this in some points,
and especially as to the date of the completion of the sale, which
they claimed was not till the 15th; also, as to the state of the
ship Bavaria, on board of which they claimed the wheat could have
been received on the 17th, and they denied any such under-
standing as was alleged by the plaintiffs, as to their reservation
of the right to recover the charges from the defendants.

The justice, on this evidence, rendered a general judgment for
the plaintiffs for two hundred and forty-eight dollars and thirty-
one cents, from which judgment the defendants appealed.

*H. W. Johnson*, for appellants.

*W. C. Barrett*, for respondents.

Dayton v. Rowland.

By the Court.—Daly, F. J.—We must assume, in respect to every point on which the testimony is conflicting, that the justice found in favor of the plaintiffs, and are consequently bound to conclude that he found that the grain was sold to the defendants on the 14th; that it was to be put on board a vessel to be designated by Grout, the measurer; that, according to the custom, the purchaser has three days of fair weather, including the day of the purchase, to unload, and that, in this case, the 16th was the last day; that the vessel was designated by Grout, but was unable to receive the grain within the time limited; that the plaintiffs' right to the use of the canal-boat expired on the 16th, and that on the afternoon of that day the owner of the boat, being entitled, on the next day, to the use and possession of it, unloaded the grain, and stored it in a warehouse, at the charge and expense of the plaintiffs, which they might lawfully do (*Rowland* v. *Miln*, 2 Hilt., 150 ; *Fisk* v. *Newton*, 1 Denio, 45), and that to enable the defendants to get it, the plaintiffs' agent paid the charges upon it, amounting to two hundred and twenty-four dollars and fifty-one cents, upon an understanding between them and the defendants that the defendants would pay the amount if they were bound in law to do so. Upon this state of facts, the justice gave judgment for the plaintiffs, and I think he decided correctly.

The owners of the canal boat were responsible to the warehouseman for the storage, and the plaintiffs, in turn, were answerable for it, to the owners of the canal-boat. It was not, therefore, a voluntary payment on the part of the plaintiffs, but was compulsory, as they were liable for the storage, and as the act of storing the grain was for the benefit of the defendants, as purchasers, and had become necessary, in consequence of the defendants' neglect to have the boat unloaded within the time limited, it was a payment to the use of the defendants, and such being the case, the plaintiffs could recover it from the defendants (*Hunter* v. *Hunt*, 1 Com. Bench R., 304; *Hooper* v. *Treffry*, 1 Exchq. R., 17; *Mayhew* v. *Forrester*, 5 Taunt., 615; *Cowell* v. *Edwards*, 2 Bos. & Pul., 268; *Gottsburger* v. *Harned*, 2 E. D. Smith, 128; *Wells* v. *Porter*, 7 Wend., 119).

The declarations of Grout were inadmissible to show that the Bavaria could not take in the grain on the 16th; but the fact was

sufficiently shown by the defendants' letter, by which they required until the end of the next day, the 17th, to unload the canal-boat.

The judgment should be affirmed.