PLATT POTTER, AD., &C., RESPONDENT, v. WILLIAM VAN VRANKEN AND ANOTHER, APPELLANTS.

*Executor—Practice—Replevin or Detinue for goods taken away—Goods sold—what action. Death of Plaintiff—Abatement of action—2 R. S. p. 386.—Code,* § 121.

If goods taken away continue in specie in the hands of the wrong-doer, replevin or detinue will lie for the executor to recover them back. Or if they have been sold, an action for money had and received may be had to recover the value thereof. And by provision of the Revised Statutes (2 R. S. p. 386, § 2), where there is but one plaintiff in an action, if he die after interlocutory judgment and before a final judgment obtained, such action will not abate, if it be such an one as might originally have been prosecuted by the executors or administrators of such plaintiff.

*Mitchell & Beattie* for Appellants.
*S. W. Jackson* for Respondent.

DAVIES, CH.J.—This action was commenced by the above Plaintiff as administrator of Adam O. Campfield, deceased, and the complaint averred that, on the 24th day of April, 1855, an action was commenced in the Supreme Court, by said Campfield, since deceased, under section 206 of the Code, against Philip H. Dedrick, who was then sheriff of the county of Schenectady, and Isaac Vedder, also deceased, as Defendants; that said Campfield claimed to be the owner of certain personal property, in said complaint in that action particularly specified, and that said Dedrick and Vedder, as he alleged, had become possessed thereof, and wrongfully detained the same from him. Said Campfield demanded judgment that said Dedrick and Vedder be required to deliver to him said goods, &c., and to pay him his damages for the detention thereof; that said Campfield made an affidavit, pursuant to the requirements of the Code, and showing the actual value of the property taken to be $1,550; that, on the 24th of August, 1855, said Campfield caused said affidavit to be delivered to one of the coroners of said county, together with a requisition

requiring said coroner to take said property and deliver the same to him, said Campfield ; and that, at the same time, said Campfield caused to be delivered to said coroner a written undertaking, duly executed, with two sufficient sureties, as required by the Code ; that on said 24th day of August, 1855, said coroner took from the possession of said Dedrick a portion of the property referred to in said complaint and affidavit ; that on the 25th of August, 1855, the Defendants in this action, for the purpose of procuring a redelivery to the said Dedrick and Vedder of the said property so taken by said coroner, made, delivered, and executed to said coroner, for the use of said Campfield, an undertaking as set out in said complaint.   It was entitled in said suit of Campfield *v.* Dedrick and Vedder, and recited that the Plaintiff claimed certain personal property, specified in the affidavit made in that action, of the alleged value of $1,550, and had caused the same to be taken by one of the coroners of the county of Schenectady, pursuant to the provisions of the Code of Procedure, but that the same had not then been delivered to said Plaintiff.   Then the said Defendants declared that, for the purpose of procuring such return, and in consideration thereof, they thereby undertook and became bound to the Plaintiff in the sum of $3,100 for the delivery of said property to the Plaintiff, if such delivery shall be adjudged to him, and for the payment to him of such sum as shall be recovered against the Defendants in that action.   The complaint further averred that upon the delivery of said undertaking, and in consideration thereof, and pursuant to the provisions of the Code, the said coroner redelivered said property to said Dedrick and delivered said undertaking to said Campfield ; that said Campfield died on the 4th of April, 1865 ; and that the Plaintiff in this action was duly appointed his administrator, and by an order of the Supreme Court, made on the 13th of April, 1865, it was ordered that said action of said Campfield against said Dedrick and Vedder be renewed, and that this Plaintiff, as such administrator, be substituted as Plaintiff therein, in the place of said Campfield ; that said Vedder, one of said Defendants, died on or about June 20, 1865, leaving his codefendant, said Dedrick, alone surviv--

ing ; that such proceedings were had in such action that, on the 28th of October, 1865, judgment was duly recorded in said action, in favor of this Plaintiff, against said surviving Defendant ; that by said judgment, duly docketed, it was ordered and adjudged that the said Plaintiff recover the possession of said goods, &c., or in case a delivery thereof cannot be had, that the Plaintiff recover of said Defendant the sum of $1,198.17, thereby adjudged to be the value thereof, and also the sum of $500 for the detention thereof, and the sum of $262 for the costs of said action, &c., and that no part of said judgment had been paid or satisfied.  The Plaintiff further alleged that on the 30th of December, 1865, an execution was duly issued upon said judgment to the then sheriff of the county of Schenectady, where said Dedrick then resided, who duly returned the same, with his return endorsed thereon that no part of said property could be found in his county, and that a delivery thereof could not be made to said Plaintiff, and that said Dedrick had no goods or chattels, lands or tenements, whereof the amount of said judgment, or any part thereof, could be made ; whereupon said Plaintiff demanded judgment against said Defendant for said sum of $1,960.17, and interest from October 28, 1865, together with the costs of said action.  The Defendants demurred, and assigned as causes of demurrer :

1. That said action, brought by said Campfield, against said Dedrick and Vedder, did not survive to the representatives of said Campfield, but abated by his death.

2. That said action abated by the death of said Vedder, one of said Defendants.

3. That the Court had not jurisdiction of the parties, or of the subject-matter of said action of Campfield against said Dedrick and Vedder, so as to continue the same in the name of this Plaintiff, and to substitute him as Plaintiff therein, and to continue the liability of these Defendants upon said undertaking.

4. That the complaint does not show a judgment against Dedrick and Vedder, in favor of said Campfield.

5. That the complaint does not show a breach of the conditions of the undertaking set out in the complaint.

6. That the complaint does not state facts sufficient to constitute a cause of action.

The case was heard upon this demurrer at a Special Term, held on the second Tuesday of April, 1866, and judgment given for the Plaintiff on the demurrer, with liberty to Defendant to answer in twenty days, on payment of costs. From this order the Defendant appealed to the General Term; and at a General Term, held on the 1st Tuesday of October, 1866, the order of the Special Term was affirmed, with costs.

The cause was then brought to a hearing at a Special Term of the Supreme Court held at the Capitol, in the city of Albany, on the 30th day of October, 1866, and a judgment entered therein, reciting that the summons and a copy of the complaint had been personally served upon the Defendants, and that they had appeared and demurred to the complaint; that said action had been duly tried upon the issue of law therein, and upon said trial judgment had been awarded in favor of the Plaintiff, with leave to the Defendants to answer in twenty days after service of a copy of such order, on payment of the costs; that said copy of order had been served and no answer had been put in, although more than twenty days had elapsed; and that said Defendants had appealed from said order to the General Term of said Court, which had affirmed said order in all things. Thereupon said Special Term, on hearing counsel for the respective parties, did order and adjudge that the said order in all things be affirmed, and that the Plaintiff recover of the said Defendants the sum of $2,098.14, for the damages which the said Plaintiff had sustained; and also the sum of $87.29 for the Plaintiff's costs and disbursements in this action; and also the further sum of $50 to the Plaintiff was then granted, as an additional allowance by virtue of section 309 of the Code, on account of the difficult and extraordinary character of the cause in this action, making the entire amount of the judgment $2,235.43; and from this judgment the Defendants directly appeal to this Court.

This Court has no authority to entertain this appeal. The Code only authorizes it to review upon appeal every actual determination

made at a General Term by the Supreme Court. The appeal in this case is taken from a judgment made and entered at the Special Term of the Supreme Court, and which has never passed under the review of the General Term of the Supreme Court. But if the appeal from this judgment were properly before us, we should have no difficulty in affirming the judgment upon the merits.

Section 121 of the Code declares that " no action shall abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue." The question then is, did the cause of action survive or continue to the representatives of the deceased Plaintiff? The complaint alleges that Campfield averred in his action that he owned the personal property specified ; that Dedrick and Vedder had become possessed thereof, and wrongfully detained the same, and that Campfield, by his complaint, had demanded judgment ; that Dedrick and Vedder be adjudged to deliver the property, and to pay him the damages for the detention thereof. It also alleged that, after the Coroner had taken the property from the possession of the Defendants, they gave an undertaking, as required by the Code, and that thereupon the property was redelivered to the Defendant Dedrick.

Here we have an allegation that Campfield's goods and chattels had been wrongfully taken and detained by Dedrick and Vedder, in the lifetime of Campfield, and that they continued to hold and possess the same. An action for such a cause of action might originally have been brought by Campfield's executors or administrators after his death, or, in other words, the cause of action survived to and continued to exist in them. Williams, in his Treatise on Executors (vol. i. p. 740), says : " So if the goods, &c., of the testator taken away continue in specie in the hands of the wrong-doer, it has long been decided that replevin and detinue will lie for the executor to recover back the specific goods, &c. ; or, in case they are sold, an action for money had and received to recover the value."

The provisions of the Revised Statutes on the subject of abate-

ment were as follows: "Where there is but one Plaintiff in an action, if he shall die after interlocutory judgment and before a final judgment obtained thereon, such action shall not abate by reason thereof, if it might be originally prosecuted by the executors or administrators of such Plaintiff." (2. R. S. 386, § 2). It is manifest that the provision of the Code was intended to be, and is, more general than the section quoted of the Revised Statutes, and that the death of the Plaintiff, at any time after the action brought, should not abate it, if the action might have been originally prosecuted by the executors or administrators of such Plaintiff. And the reason of the change is obvious, as, by the Code, no provision was made for an interlocutory judgment, and none contemplated. And the provision in the Revised Statutes, that the action should not abate by reason of the death of a sole Plaintiff, if interlocutory judgment had been rendered, provided the action might originally have been prosecuted by the executors or administrators, is the synonyme or equivalent of that in the Code, that it should not abate if the cause of action survived or continued. In Webbers' Executors *v.* Underhill (19 Wend. 449), Cowen, J., says: "Replevin will lie by the personal representatives of the party injured" (citing numerous authorities); and at page 453 he says: "According to the cases we have considered, if there had been interlocutory judgment against Webbers, and he had survived the Plaintiff Underhill, the personal representatives of the latter might still have proceeded; for we have seen, by authority, that they could have prosecuted originally." In Burkle *v.* Luce (1 Coms. 163) the Plaintiffs, as executors of one Charlotte Seitz, sued Luce in replevin. They claimed the property by virtue of a delivery to her of the same, in an action of replevin which she brought, and had the goods delivered to her by virtue of the writ. Pending that action Mrs. Seitz died, and the Plaintiffs were appointed her executors. In July or August following, the Defendant repossessed himself of the goods and claimed to hold them by virtue of his levy, made before Mrs. Seitz commenced her replevin suit, and thereupon the Plaintiffs, as executors, brought this second action of replevin and took the property.

Both these actions were commenced before the adoption of the Code; and this Court held that, under the provision of the Revised Statutes, the actions brought by Mrs. Seitz had abated by her death, and could not be revived. But there seems to have been no question made that the executors could maintain replevin to recover the property of their testatrix, or its value. And Ch. J. Jewett concedes this right in his opinion when he says: "Upon the operation of these principles no one is exposed to sustain any injury; for, if the Defendant retakes the goods, a remedy is open to the Plaintiff's representatives to test the right by suit."

In view of the provisions of the Revised Statutes, it cannot be doubted that the executors could have maintained that action. They declare : " For wrongs done to the property, rights, or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or, after his death, by his executors or administrators, against such wrong-doer; and after his death against his executors or administrators, in the same manner and with the like effect in all respects, as actions founded upon contracts " (2 R. S. p. 447, § 1).

The exceptions contained in the second section relate exclusively to injuries to the person. We are referred to Hopkins *v.* Adams as authority for the position that the Supreme Court had not the power to order the suit of Campfield against Dedrick and Vedder to be continued in the name of the personal representative of the Plaintiff, upon his death. That case is reported in 6 Duer, 685, and the principle decided is thus stated there: " An action for the recovery of possession of specific personal property wrongfully detained, against a sole defendant, wholly abates if the Defendant dies before verdict or judgment; and the Court has no power in such case to order the action to be continued against the personal representatives of the Defendant." And the reasons are obvious why this is so; but they have no application to a revivor upon the death of a sole Plaintiff, who is seeking to recover his property wrongfully detained, or the value thereof.

The precise question now under consideration arose and was decided in the New York Common Pleas in the case of Lahey *v.*

Brady, (1 Daly 443). The carefully prepared and learned opinion of the First Judge of that Court will repay an attentive perusal. It conclusively demonstrates that an action of replevin does not abate by the death of a sole Plaintiff, and that it is competent for the Court, by order, to revive the same in the name of the representative of the deceased. The action was upon an undertaking against the sureties given by a Plaintiff, in replevin. Pending the suit the Plaintiff died, and his administratrix declining to revive the suit, the Defendant applied to the Court, upon motion, for an order to revive the same in her name. This was granted, and Defendant Lahey then proceeded in the action and obtained judgment against her, and then commenced his action upon the original undertaking. The Defendant Brady, one of the sureties, demurred to the complaint, and insisted that replevin was not one of that class of actions which could be continued by order of the Court, in the name of the personal representatives of the party, for the reason that the cause of action did not survive, and that therefore all the proceedings had by the order of the Court, after the death of the Plaintiff in replevin, were without authority and void.

Judge Daly observes that, "at the common law, all actions abated by the death of either party for the want of litigants, and if the cause of action survived, the personal representatives of the deceased party had to bring another action. In replevin, if the Plaintiff died, the cause of action survived, but if the Defendant died, the right of action against him died with him; so that, although the personal representatives of a party, from whom goods or chattels had been tortiously taken in his lifetime, might maintain replevin, no such action could be maintained against the personal representatives of one who in his lifetime had tortiously possessed himself of goods, unless the property came into the possession of the personal representatives, and they refused to restore it. In the much debated case of Mason *v.* Dixon (Sir Wm. Jones Rep. 173) the common law was declared by the Court to be as follows: If the goods of J. S. were taken tortiously, and he died, his executor could not have trespass at the common law, even

though the goods were destroyed, but he could have replevin by a writ in detinue for the recovery of the thing itself; and if J. S. took goods tortiously, and died, trespass would not lie against J. S.'s executors, even though the goods were destroyed; but if the executor have the goods in his possession, then detinue would lie against him upon his own possession. The rule of the common law was enlarged by the statute of 4 Edw. III., ch. 7, which gave a remedy in damages to the executor for a tortious carrying away of the goods of the testator in his lifetime, and this statute being always equitably construed, the executor might, according to the exigencies of his case, bring replevin, detinue, trover, trespass, or an action for money had and received. It was the design of the statute, said the Court, in the Bishop of Coventry and Litchfield's case (1 Anderson's R. 241), where the testator had been tortiously deprived of his chattels, that the executor should have such action as the testator could have had ; and see to the same effect, Countess of Rutland's case (1 Cro. Eliz. 378); Berwick v. Andrews (2 Ld. Ray., 973–4); Chamberlain v. Williamson (2 M. and S. 408). But neither this statute nor the common law gave any right of action against the executor or administrator of a person who had tortiously taken goods in his lifetime (Carter v. Fosset, Palmers' R. 329 ; Hambly v. Trott, Cowp., 371). Thus it was held in Mellen v. Baldwin (4 Mass. 480) that, though the action of replevin survives the death of the Plaintiff, it does not survive the death of the Defendant. In replevin, said Chief Justice Parsons, in delivering the opinion of the Court, the ground of action for the Plaintiff is his property, either general or special, and a tortious violation of his right of property by the Defendant. The Defendant is therefore charged with a tort which cannot survive against his executor or administrator. . . . . . But the executor or administrator of a Plaintiff in replevin may come in and prosecute, because the chattels of the deceased being vested in him by law, he might sue a replevin against the Defendant, who had unlawfully taken, and still held them, and this within the equity of the statute of 4 Edward III." Judge Daly adds: " The present is the case of the death of a Plaintiff in replevin where, as has

been shown by these authorities, the cause of action survives; and the Code declares that, where the cause of action survives, the action shall not abate, and that the Court may order it to be continued by the representatives or successor in interest of the party deceased." Judge Daly refers to the two cases in the Courts of this State, and which were relied upon by the Defendants, upon the argument in that case, as they are now relied upon by the Defendants on this argument, and says : " They are not in conflict with the view of the law as above stated. Webbers' Exrs. *v.* Underhill was a case of the death of a Defendant in replevin, and the Court necessarily held that the action could not be revived by scire facias. In Burkle *v.* Luce, Judge Jewett, in reference to a previous action of replevin, said that the action abated by the death of the Plaintiff, and this was correct ; but the question did not arise as to whether the cause of action survived to the executor, or as to whether the action could be revived by scire facias, for the Defendant in the replevin, after the death of the Plaintiff, took the property again, upon which the executors, as a wrongful taking of it from them, brought a second action of replevin, and were defeated, upon the ground that the testator's claim to the property was founded upon a sale that was fraudulent and void."

We have referred thus liberally to this opinion of Judge Daly's, because it demonstrates, upon principle and authority, the position that, upon the death of a Plaintiff in replevin, the action survives to his representatives, and leaves nothing further to be said upon the question.

It is equally clear and indisputable that the action did not abate by the death of one of the Defendants, Isaac Vedder. The Revised Statutes declare that "where there are two or more Defendants in any action, and one or more of them shall die before final judgment, such action shall not be thereby abated ; but such death shall be suggested on the record, and the action shall proceed against the surviving defendant " (2 R. S. 386, § 1).

If the preceding views are correct, there is no force in the objection that the Special Term of the Supreme Court had not juris-

diction to make the order for the revival of the original action. As that order was unappealed from, and remains in full force, a question might perhaps be raised that it could not be challenged collaterally by these Defendants; but it is not important to consider that question, as we are of the opinion that it was properly made, and the Court had jurisdiction to make it.

It is also claimed that the complaint is defective in this, that it does not aver the redelivery of the property to the Defendants, Dedrick and Vedder, but only the Defendant Dedrick. The Defendants admit by their demurrer the allegations of the complaint, that, for the purpose of procuring a redelivery to Dedrick and Vedder, they made, executed, and delivered to said coroner, for the use and benefit of Campfield, the said undertaking, and that, upon the delivery of the said undertaking, and a requisition for the return thereof *by the Defendants* in such action, the said coroner redelivered the said property to said Dedrick. This is, in substance and effect, a redelivery to both Defendants. They both made the requisition for the property, and it is plainly inferable that Dedrick acted as the agent of both Defendants in resuming the possession of the property. It was a delivery to both; and it is not difficult to see why Dedrick took the manual possession thereof. The goods were probably held by him as sheriff, on process issued in Vedder's favor against Campfield at the time the same were taken by the coroner in the replevin suit. The restoration and redelivery was to place things in statu quo, and the delivery to Dedrick was a delivery to both Defendants, and for the benefit of both.

Neither can the claim of this Plaintiff be defeated from the circumstance that one of the Defendants died during the progress of the action. The substance and effect of the Defendants' engagements was to pay such sum as might, for any cause, be recovered against the Defendants in the action. This clearly means, either the Defendants personally, or those who may lawfully represent them in the action at the time judgment should be obtained. Any other construction would render almost worthless the numerous undertakings given upon orders to discharge from arrest

upon injunctions issued in replevin suits, both by Plaintiff and Defendants, and upon appeals. The undertaking is for the payment to the Plaintiff, or those lawfully representing him, what he or they may recover against the Defendants, or those lawfully representing them in the action. The suit was lawfully continued against the surviving Defendant; and a recovery in the action against him as such survivor was a recovery against the Defendants in the action, within the meaning and intent of the undertaking, if not within its strict letter.

The action was properly at the Special Term, after the issue of law was decided in the action. But if any irregularities were committed there (and we think it proper to say that, in our judgment, there were none), they cannot be reviewed upon an appeal from the Special Term to this Court. An appeal would only lie to review them from the actual determination of the General Term.

Upon the merits, therefore, we are clearly of the opinion that the judgment is correct; but, for the reasons heretofore given, the appeal must be dismissed, with costs.

PARKER, J.—I think the demurrer to the complaint was properly overruled. The action in which the bond, which is the foundation of this suit, was given, did not abate by the death of the Plaintiff and of one of the Defendants. The cause of action survived the death of the Plaintiff by virtue of the statute (2 R. S. 447, § 1, 1st ed.; Webbers' Ex'rs *v.* Underhill, 9 Wend. 447; and see Pitts *v.* Hale, 3 Mass. 321; Mellen *v.* Baldwin, 4 Mass. 480). And it being a wrongful detention of the Plaintiff's property by the Defendants, the cause of action against the surviving Defendant was not affected by the death of his co-defendant.

By section 121 of the Code, the cause of action surviving, there was no abatement, and the action properly proceeded in the name of the present Plaintiff (he having been duly substituted for the deceased Plaintiff) against the surviving Defendant. Nor was the fact that judgment went against such surviving Defend-

ant alone, without his deceased codefendant, any objection against a recovery on the bond. This instrument must be construed, as is its evident intent, to require a recovery in the action by the Plaintiff, or his successor in interest, against the Defendants, or the survivor of them.

The contingencies of change of parties in the action are, of course, contemplated, both by the statute under which the bond was given, and by the parties in giving it. The recovery in the action by the party who shall, at the time of recovery, be the Plaintiff, against the party who shall then be Defendant, is the substance and meaning of the condition.

No questions are properly before us except those raised by the demurrer.

I am of the opinion that the judgment should be affirmed.

All concur in affirming on the merits, and also in dismissal.

<div align="right">

JOEL TIFFANY,

State Reporter.